```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____
ZELMA D. KING,

                          Plaintiff,           10-CV-6219

             v.                                 DECISION
                                                and ORDER
MICHAEL J. ASTRUE, Commissioner
of Social Security

                          Defendant.
_____
```

### INTRODUCTION

Plaintiff Zelma King("Plaintiff") brings this action pursuant to 42 U.S.C. § 1383 (c)(3) and 42 U.S.C. § 405(g) of the Social Security Act ("the Act") seeking review of a final decision of the Commissioner of Social Security ("Commissioner"), denying her application for Supplemental Security Income ("SSI").

The Commissioner moves for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) ("Rule 12(c)") on the grounds that the Administrative Law Judge's ("ALJ") decision was supported by substantial evidence. Plaintiff opposes the Commissioner's motion and cross-moves for judgment on the pleadings pursuant to Rule 12(c), on grounds that the Commissioner's decision was erroneous and not supported by substantial evidence in the record. For the reasons set forth herein, the Court finds that the record does not contain substantial evidence of a medical improvement to support the Commissioner's decision to deny Plaintiff a closed period of disability benefits. Therefore the Plaintiff's motion for judgment on the pleadings is granted.

**BACKGROUND**

On September 14, 2006, Plaintiff protectively filed an application for SSI alleging disability beginning August 30, 2005. Her claim was denied on March 5, 2007. Plaintiff then filed a timely request for a hearing. On November 20, 2008, Plaintiff appeared at a video hearing before ALJ Theresa C Timlin. In a decision dated April 23, 2009, the ALJ determined that from August 30, 2005 through September 30, 2008, Plaintiff had been disabled. The ALJ also determined that as of October 1, 2008, medical improvement occurred and Plaintiff was no longer disabled. On February 17, 2010, the ALJ's decision became the Commissioner's final decision after the Appeals Council denied Plaintiff's request for review. On June 4, 2009, Plaintiff filed a second application for SSI benefits. Based on that second filing, Plaintiff was found to be disabled and as of June 4, 2009 is currently receiving SSI benefits. On April 19, 2010, Plaintiff filed the instant action. The issue before the Court is whether Plaintiff was disabled between October 1, 2008, the date a medical improvement was found, and June 4, 2009.

**DISCUSSION**

**I. Jurisdiction and Scope of Review**

42 U.S.C. § 405(g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits. Additionally, the section directs that when considering such a

claim, the Court must accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record. Substantial evidence is defined as, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. NLRB, 305 U.S. 197, 217 (1938). Section 405(g) thus limits the Court's scope of review to determining whether or not the Commissioner's findings were supported by substantial evidence. See Mongeur v. Heckler 722 F.2d 1033, 1038 (2d Cir. 1983) (finding that a reviewing Court does not try a benefits case de novo). The Court is also authorized to review the legal standards employed by the Commissioner in evaluating plaintiff's claim.

The Court must "scrutinize the record in its entirety to determine the reasonableness of the decision reached." Lynn v. Schweiker, 565 F. Supp. 265, 267 (S.D. Tex. 1983) (citation omitted). The Commissioner asserts that his decision was reasonable and is supported by substantial evidence in the record, and moves for judgment on the pleadings pursuant to Rule 12(c). Judgment on the pleadings may be granted under Rule 12(c) where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings. Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639 (2d Cir. 1988). If, after a review of the pleadings, the Court is convinced that Plaintiff has not plead a plausible claim for relief, judgment on the

pleadings may be appropriate. See Bell Atlantic v. Twombly, 550 U.S. 544 (2007).

## II.  The Commissioner's Decision

In her decision, the ALJ found that Plaintiff was disabled within the meaning of the Act from August 30, 2005 through September 30, 2008, but that Plaintiff experienced a medical improvement starting October 1, 2008 and was no longer disabled as of that date. The ALJ adhered to the Social Security Administration's five-step sequential analysis in determining disability benefits. See 20 C.F.R. § 404.1520.[1]

Here, at Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity from August 30, 2005 through September 30, 2008. (Transcript of Administrative Proceedings at 12) ("Tr."). At Steps Two and Three, the ALJ concluded that Plaintiff's impairments, which include low back pain and major depressive disorder, were "severe" within the meaning of the Regulations. However, the ALJ concluded that Plaintiff's impairments did not meet or equal, either singly or in combination,

---

[1] The analysis requires the Commissioner to determine if the Plaintiff: "1) is engaged in substantial gainful activity; (2) suffers from an impairment or combination of impairments that is "severe"; (3) suffers from an impairment or combination of impairments that meets or equals a listed impairment; (4) is able to perform his or her past relevant work; and (5) is able to perform work existing in significant numbers in the national economy." McCrea v. Commr. of Soc. Sec., 370 F.3d 357, 360 (3d Cir. 2004).

any of the impairments listed in Appendix 1, Subpart P. (Tr. at 12).

Under Steps Four and Five, the ALJ concluded that Plaintiff had the RFC to perform sedentary work but had the following limitations: she could not lift or carry more than 10 pounds on occasion and less than 10 pounds frequently, stand and walk for more than two hours in an eight hour day and could sit for less than six hours provided she could alternate between sitting and standing, she was unable to concentrate for an hour at a time, and could not complete a work week without interference from her psychotic symptoms.(Tr. at 12). At Step Four, the ALJ found Plaintiff was unable to perform any of her past relevant work as an assembly line worker. (Tr. at 14). At Step Five, considering Plaintiff's age, education, work experience, and RFC, the ALJ concluded that there were no jobs existing in significant numbers in the national economy that Plaintiff could perform. (Tr. at 15).

In finding that Plaintiff was no longer disabled as of October 1, 2008, the ALJ adhered to the eight-step evaluation process to determine if the disability continues. See 20 C.F.R. § 416.994(f). At Step One, the ALJ found that as of October 1, 2008, Plaintiff did not have an impairment or combination of impairments that meets or medically equals any of the impairments listed in Appendix 1, Subpart P. (Tr. at 15). At Step Two, the ALJ found that there was medical improvement of Plaintiff's back pain

and major depressive disorder.(Id.). At Steps Three and Five, the ALJ found that Plaintiff's medical improvement was related to her ability to work and that the Plaintiff now had a new RFC to perform the full range of sedentary work as defined in the regulation. (Tr. at 15, 16). At Steps Six, the ALJ found that because Plaintiff's prior employment required a light functional capacity, Plaintiff was unable to perform her past relevant work with the new RFC. (Tr. at 16). At Step Seven, considering her age, education, work experience and RFC, the ALJ found that Plaintiff's disability ended as she was able to perform a significant number of jobs in the national economy. (Id.). Plaintiff contends that the ALJ erred in finding at Step Three that she experienced a medical improvement in her depression and back pain sufficient to warrant a reassessment of her RFC as of October 1, 2008. 20 C.F.R. § 416.994(f)(3).

### III. Medical History
#### A.  Back Pain

There is ample evidence in the record demonstrating Plaintiff's history of back pain. Due to low back and bilateral leg pain, on December 28, 2005, a bilateral L4-L5 laminectomy and foraminotomy was performed by Edward Vates, M.D. (Tr. at 289). Plaintiff continued to experience spinal muscle spasms that induced pain. (Tr. at 285). Following the surgery, Plaintiff presented to Rochester General Hospital Physical Therapy from June 26, 2006 through September 19, 2006. (Tr. at 152-161) (Pl. Br. at 3). During this time, Plaintiff was also treated by David S. Moorthi, M.D.,

6

for pain in the lower left back, left buttock and right calf. (Tr. at 119, 123, 124). Dr. Moorthi noted that Plaintiff's back pain was a 10/10 and that she was unable to tolerate the physical therapy. (Tr. at 123). On August 7, 2006, and August 23, 2006, Dr. Moorthi administered caudal epidural injections. (Tr. at 121, 122). Additionally, between the periods of August 16, 2007 and September 30, 2008, Plaintiff presented to the Twig Medical Group for her back pain, depression, and urinary issues. (Tr. at 308-35).

On January 29, 2007, Plaintiff met with consultative examiner James Naughten, D.O. (Tr. at 233-236). He noted that when Plaintiff "performed some of the motions today, she cried and appeared to be in pain. She was teary eyed." (Tr. at 234). He noted a bilateral lumbar sprain and spasm, and joint tenderness. (Tr. at 236). Dr. Naughten opined that Plaintiff had no limitations seeing, hearing, talking, sitting, standing, pushing, pulling, or reaching, but that there were moderate limitations for walking and climbing stairs. (Id.).

Between April 9, 2008 and November 5, 2008, Plaintiff treated with Pierre Girgis , M.D., for her back pain. Due to a diagnosis of lumbar spondylosis, L4-L5 lumbar spondylolisthesis, and L4-L5 lumbar stenosis, on August 8, 2008, Dr. Girgis performed Plaintiff's second spinal surgery. (Tr. at 353). The operation involved a re-exploration of the L4 bilateral, a re-exploration of

the L5 bilateral, and the insertion of a biomechanical intervertebral device at the L4-L5. (Id.).

Plaintiff followed up with Dr. Girgis's office twice after her surgery. On September 9, 2008, Plaintiff met with Kathleen, McIntosh, N.P. (Tr. at 357). Nurse McIntosh noted that Plaintiff had intermittent pain in the right groin, although the pain was much improved from before the surgery. (Id.). Nurse McIntosh opined that Plaintiff had a sturdy gait, good strength in her lower extremities bilaterally, and that her sensory exam in the lower extremities was intact. (Id.). Plaintiff was told to begin using ibuprofen to wean off of the narcotics given to her for the surgery. (Id.). On 11/5/2008, Plaintiff met with Dr. Girgis. (Tr. at 358-59). Dr. Girgis noted that Plaintiff was better than before her surgery, but still had some residual back pain. (Tr. at 358). Dr. Girgis opined that Plaintiff was "progressing quite well and very steadily since her lumbar fusion surgery in August." (Id.). He told Plaintiff that she could start weaning off the back brace and that she could take Advil for inflammation or pain issues. (Id.).

On June 2, 2009, Barbara Weber, M.D., completed a medical source statement. (Tr. at 361-364). It was Dr. Weber's opinion that Plaintiff would be limited to lift/and or carry less than 10 pounds, frequently lift and/or carry less than 10 pounds, stand and/or walk less than 2 hours in an 8-hour workday, and must periodically alternate sitting and standing to relieve pain or

8

discomfort. (Tr. at 361-62). Dr. Weber further opined that Plaintiff could would not be able to perform any postural activities, and would be limited in her ability to reach in all directions. (Tr. at 362-63). This medical source statement was not reviewed by the ALJ but was submitted to the Appeals Council. (Pl. Br. at 6).

**B.   Depression**

Plaintiff has a long history of depression. (Tr. at 13). Starting December 5, 2006, Plaintiff presented to Randy Smart, M.S., for treatment. (Tr. at 138-150). On December 20, 2006, Smart completed a psychological assessment of Plaintiff. (Tr. at 140). He noted that Plaintiff spends most of her day in bed, isolates, and has little to no contact with others. He noted that her mood was depressed. (Id.). Smart's initial treatment plan was to address her depression and sobriety issues. (Tr. at 142). On January 29, 2007, Plaintiff met with consultative examiner Christine Ransom, Ph. D. (Tr. at 229-32). Dr. Ransom opined that Plaintiff should follow through with psychiatric services for depression and that the prognosis was fair to good with treatment. (Tr. at 232).

Plaintiff presented to Gregory L. Seeger, M.D., of the Genesee Mental Health Center. (Tr. at 294). Dr. Seeger diagnosed Plaintiff with moderate to severe major depression, recurrent with psychotic features, and placed Plaintiff on medication. (Id.). Dr. Seeger opined that Plaintiff could not work and that he would support

Plaintiff receiving social security benefits. (Id. at 294-95). Between June 6, 2007 and November 7, 2007, Plaintiff also met with Bonnie Bullivant, F.N.P. (Tr. at 296-303). Nurse Practitioner Bullivant also diagnosed Plaintiff with major depression, recurrent with psychotic features. (Tr. at 296-97).

On February 12, 2008, Dr. Seeger noted that Plaintiff's mood had been good as of late. (Tr. at 304). He opined that Plaintiff's major depression had resolved, but that psychotic symptoms might return. On March 24, 2008, Dr. Seeger noted that her mood had been good even though she was not on her antidepressants. (Tr. at 306). The voices she heard had been good as well. (Id.). Dr. Seeger also noted no signs of depression. Again, he opined that Plaintiff's major depression had resolved but that if the psychosis returned, he would recommend a different medication. (Id.).

On October 23, 2008, Therapist Smart completed an RFC assessment of Plaintiff. He opined that a routine job might exacerbate Plaintiff's psychological problems. (Tr. at 278). Smart opined that Plaintiff was unable to complete a normal workday and perform at a consistent pace. ( Tr. at 277). Additionally, he opined that Plaintiff had a medically/psychologically determinable impairment which could reasonably be expected to produce her symptomology. (Tr. at 278).

## IV. **Medical Improvement of Plaintiff's Disability**

This Court finds that the ALJ's determination that Plaintiff medically improved was not based on substantial evidence in the record. Under the medical improvement standard, although a claimant may have been deemed disabled, that claimant may later be found not disabled when "there is substantial evidence that the impairment has improved to such an extent that [Plaintiff] is now able to work." Veino v. Barnhart, 312 F.3d 578, 586 (2d Cir. 2002).[2] It is the Commissioner's burden to establish medical improvement. Robbins v. Barnhart, 205 F. Supp. 2d 1189, 1201 (D. Kan. 2002).

According to 20 C.F.R. § 404.1594, medical improvement is "any decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled." To determine whether a medical improvement has occurred, the SSA must compare the "'the current medical severity of th[e] impairment[ ] ... to the medical severity of that impairment[ ] at th[e] time' of the

---

[2] Although the medical improvement standard undoubtedly applies during Continuing Disability Reviews ("CDR"), the Second Circuit has not specifically addressed whether this standard applies in a closed period case. However, other New York district courts and circuit courts of appeal have found that the standard does apply in closed period cases. See Carbone v. Astrue, 08-CV-2376 NGG, 2010 WL 3398960 (E.D.N.Y. 2010); Chavis, 2010 WL 624039 (citing Waters v. Barnhart, 276 F.3d 716, 719 (5th Cir.2002), (Shepherd v. Apfel, 184 F.3d 1196, 122 (10th Cir.1999), Chrupcala v. Heckler, 829 F.2d 1269, 1274 (3rd Cir.1987), Pickett v. Bowen, 833 F.2d 288, 292 (11th Cir.1987)). Thus, this Court will apply the medical improvement standard to this closed period case.

most recent favorable medical decision." Veino, 312 F.3d at 586-87 (quoting 20 C.F.R. § 404.1594(b)(7)).  In a closed period case such as this, the "time of the most recent favorable medical decision," alternately known as the "point of comparison," starts at the disability onset date. Chavis v. Astrue, 5:07-CV-0018 LEK VEB, 2010 WL 624039 (N.D.N.Y. 2010).

Implicit in the medical improvement standard is that the nature of the improvement is not temporary in nature.  To determine if a disability is in temporary remission, the SSA "will be careful to consider the longitudinal history of the impairments, including the occurrence of prior remission, and prospects for future worsenings." 20 C.F.R. § 404.1594(c)(3)(iv). If the Secretary finds the remission to be temporary, then the inquiry stops, and claimant's entitlement to disability benefits continues. Carlson v. Shalala, 841 F. Supp. 1031, 1037 (D. Nev. 1993).  Reviewing the "longitudinal history" of Plaintiff's mental impairment, the ALJ should have found Plaintiff's improvement to be only a temporary remission.

For Plaintiff's mental impairment, the ALJ based her medical improvement decision solely upon on two treatment notes from Dr. Seeger on February 12, 2008 and March 24, 2008. (Tr. at 15). Specifically, the ALJ found medical improvement because "Dr. Seeger described the claimant's major depressive disorder as being in

remission. The Claimant was off all medication, was in a good mood and showed no signs of psychosis." (Id.).

While these notes do indicate some improvement, they cannot be considered to be substantial evidence of improvement, when compared to the three years of her recorded treatment for major depression with psychosis. (Tr. at 304, 306). Prior to these two treatment dates, Plaintiff had been diagnosed by both Dr. Seeger and Nurse Bullivant with major depression, recurrent with psychotic features. (Tr. at 294, 296-97). Although Dr. Seeger opined in the February and March notes that Plaintiff's major depression had resolved, Dr. Seeger "warned [Plaintiff] that the psychotic symptoms might return" and was prepared to recommend a trial of Geodon[3] "if the psychosis restart[ed]." This is an indication of the prospects for a future worsening which the regulations require to be taken into account for temporary remission determinations. See 20 C.F.R. § 404.1594  (Tr. at 305,306). Dr. Seeger even noted a "possible episode last month" in his March note, hinting at a possible recurrence of the depression. (Id.).

The SSA's Program Operations Manual System ("POMS") provides that certain medical disorders "can give the appearance of medical

---

[3]Geodon is a "prescription medicine called a psychotropic . . . and can be used to treat symptoms of schizophrenia and acute manic or mixed episodes associated with bipolar disorder." Physicians' Desk Reference, 2730 (64th ed. 2010). The record demonstrates that Geodon was one of the antidepressant medications that had been prescribed for Plaintiff's major depression. (Tr. at 360).

improvement when in fact there has been none." SSA, POMS § DI 28010.115(B)(2). According to the SSA, certain impairments, including "many mental impairments," are subject to temporary remission. Id.; See Carlson, 841 F. Supp. at 1037-38(it would be reasonable to conclude that "Plaintiff's partial remission [of paranoid schizophrenia] between late 1983 and 1990 was temporary within the meaning of this regulation, and therefore not a "medical improvement.").

To determine if a remission is temporary, "all available evidence" should be taken into consideration. SSA, POMS § DI 28010.115(B)(2)(B). This includes "treating source evidence and statements." (Id.). On October 23, 2008, Therapist Smart, having previously met with Plaintiff at least six times, completed an RFC assessment.(Tr. at 277). The ALJ characterized this assessment as finding "only one moderately severe issue" but that, "the therapist [found] the claimant's psychological deficits to be mostly very slight with only a few moderate impairments." (Tr. at 16). However, Therapist Smart also stated that a routine job would exacerbate Plaintiff's symptoms and that she does have a medically/psychologically determinable impairment which could reasonably be expected to produce her symptoms. (Tr. at 278).

Additionally, part of the medical improvement determination is whether there is improvement in Plaintiff's symptoms. Plaintiff's testimony, taken together with the objective medical evidence in

the record, provides substantial evidence that her symptoms did not improve. During the hearing, Plaintiff stated that she continued to hear voices, particularly at night. (Tr. at 37). On March 22, 2007, Plaintiff told Dr. Seeger that she has trouble sleeping at night and that "[s]he does hear voices. The voices call her name. She heard the voices for the past ten years." (Tr. at 294). Although Plaintiff did not indicate that she heard voices in her subsequent visits, Nurse Bullivant added a diagnosis of psychosis to the diagnosis of major depression. (Tr. at 300-301). The Record as a whole provides substantial evidence that there was no medical improvement, although Plaintiff's symptoms were intermittent.

The ALJ found Plaintiff's testimony not completely credible because her testimony about her ongoing depression was not consistent with Dr. Seeger's notes. (Tr. at 17, 304, 306). This Court disagrees. Although the ALJ retains discretion to evaluate the credibility of the Plaintiff and "to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant," Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979), that credibility determination must be based on substantial evidence. See Lewis v. Apfel, 62 F.Supp.2d 648, 651 (N.D.N.Y.1999). Here, although Dr. Seeger's notes indicate periods of intermittent "voices", (Tr. at 296-306), Plaintiff did not testify that she hears the voice every day. At one point, Plaintiff testified that

15

she has "been hearing [the voices] for a long time. They go and come." (Tr. at 37). This Court finds that the Plaintiff's testimony is not "inconsistent with [Plaintiff's] own reports to her doctors and their opinions," and as such, the ALJ's credibility determination was not based on substantial evidence in the record.

Additionally, the Court finds that the record does not contain substantial evidence of medical improvement in Plaintiff's back pain. The ALJ found medical improvement because in August 2008, Plaintiff "underwent a second back surgery and the follow-up appointments in September and November indicated[ed] that the back pain was pretty much alleviated with the patient no longer using narcotic pain killers." (Tr. at 15). However, the treatment notes and other objective medical evidence, as well as Plaintiff's testimony, do not indicate that the back pain was resolved.

Dr. Girgis' most recent note on November 5, 2008, stated that Plaintiff told him that although she felt better than she did before the surgery, she still had residual pain. (Tr. at 358). Additionally, she told Dr. Girgis that she could not lie on her stomach and sometimes had difficulty with activities secondary to her pain. (Id.).

A medical source statement submitted by Plaintiff's primary care physician on June 2, 2009, opined that due to Plaintiff's pain, immobility, and limited gait: Plaintiff was limited to lifting 10 pounds at any time, could not stand and/or walk less

than two hours in an eight hour work day, would have to periodically alternate between sitting and standing, was limited in her ability to push/pull with her lower extremities, Plaintiff could never perform any postural activities, and was limited in reaching in all directions. (Tr. at 361-65).

Furthermore, Plaintiff's testimony, which was given 15 days after Dr. Girgis's last note, is replete with claims of ongoing back pain. Among other statements, Plaintiff testified that "on a good day, [her pain] is probably a six, but mostly a 10." (Tr. at 31). She testified that during the week, she "[m]aybe [has] about two [good days] out of the week, not too many. [She is] always in pain." (Tr. at 31). At one point during the hearing, Plaintiff said that she "needed to get up right [then]" and asked if she could "push [the] chair back and just stand for a little bit." (Id.). The ALJ found Plaintiff's testimony about her ongoing pain not completely credible because it was not consistent with her own reports to her treating doctors and their opinions. (Tr. at 17). However, the reviewing court does not need to defer to the credibility determination of the ALJ if the determination is not explained and not supported by substantial evidence. See McDonaugh v. Astrue, 672 F. Supp. 2d 542, 565 (S.D.N.Y. 2009). This Court finds that the totality of the record lacks substantial evidence to find that Plaintiff's testimony was not credible, but rather, the record substantially supports her allegations of continued pain.

In sum, this Court finds that despite Dr. Seeger's two treatment notes, the total record supports a finding that there was a temporary remission in Plaintiff's mental impairment, not a medical improvement as required by the applicable regulations. 20 C.F.R. § 416.994(f)(3). Additionally, in light of the consistency between Plaintiff's testimony about her back pain and Dr. Girgis' treatment notes, as well as Plaintiff's primary care physician's medical source statement, this Court finds that the record does not contain substantial evidence of medical improvement in Plaintiff's back pain. Because there was no medical improvement, Plaintiff continued to be disabled as of October 1, 2008. See 20 C.F.R. § 404. 1594.

## CONCLUSION

This Court finds that the Commissioner's decision to deny SSI benefits between October 1, 2008 and June 4, 2009 was not supported by substantial evidence in the record. The record contains substantial evidence of a continued disability such that further evidentiary proceedings would serve no purpose. I therefore grant judgment on the pleadings in favor of Plaintiff and remand this matter to the Social Security Administration for the calculation of benefits.

**ALL OF THE ABOVE IS SO ORDERED.**

                                          S/Michael A. Telesca
                              _____
                                 MICHAEL A. TELESCA
                             United States District Judge

Dated:    Rochester, New York
             January 26, 2012